Vermont Superior Court
Filed 06/29/26
Washington Unit

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 26-CV-00023

---

**Diane Williams, et al v. State of Vermont Agency of Transportation, et al**

---

## ENTRY REGARDING MOTION

Title:    Motion to Dismiss; Motion to Dismiss; Notice of Attorney's Withdrawal; Motion; Motion for Extension of Time; Motion in lieu of answer; ; for Defendant Vermont State Employee's Association; for Leave to File Surreply to #3; to File Late Reply - Unopposed; for Leave to File Surreply  (Motion: 3; 4; ; 6; 7; 8)
Filer:    Sean P. Noonan; Peter A. Sterling; Sean P. Noonan; Alfred Gordon O'Connell; Peter A. Sterling; Thomas M. Higgins
Filed Date:    March 23, 2026; April 02, 2026; April 22, 2026; May 15, 2026; May 21, 2026; June 04, 2026

---

The motion is GRANTED IN PART and DENIED IN PART.

---

Plaintiff Mr. Richard Williams, a Vermont Agency of Transportation (AOT) employee during the underlying events, was seriously injured when, on a jobsite, AOT co-employee Defendant Peter Lynds, who was operating a small excavator for work purposes, allegedly drove over Mr. Williams' leg.  Mr. Williams has a workers' compensation claim underway.  21 V.S.A. §§ 601–712 (Vermont Workers' Compensation Act).

In this case, however, despite the statutory exclusivity provision of the Act (21 V.S.A. § 622), Mr. Williams has asserted several claims against the AOT, the Vermont Department of Human Resources (DHR), and the Vermont Occupational Safety and Health Administration (VOSHA) (collectively, the State), as well as Courtney O'Brien (a DHR manager), Shannon Gilbert (an AOT manager), Timothy Hebb (an AOT supervisor), and Peter Lynds (the co-employee who ran over his leg).

Against the State entities, Mr. Williams asserts various formulations of negligence claims and respondeat superior liability for the conduct of its employees (Counts 1–4, 11), and a claim for uninsured/underinsured motorists (UM/UIM) coverage (Count 13).  As against State-

1

employee Defendants Lynds, O'Brien, Gilbert, and Hebb (Counts 6–7, 9–10), he asserts gross negligence.[1]

Separately, Mr. Williams is also asserting claims against Defendant Vermont State Employees' Association (VSEA) and its employee, Defendant Robert South.[2]  He asserts that Mr. South also is liable for gross negligence, and that VSEA has respondeat superior liability as Mr. South's employer for his gross negligence (Counts 5, 8, 12).[3]

All claims in the complaint arise out of the same injury to Mr. Williams' leg.  Two motions to dismiss are pending, one filed by the State defendants and one filed by the VSEA defendants.[4]

1.      *Dismissal standard*

The Vermont Supreme Court has described the familiar standard for Rule 12(b)(6) motions to dismiss for failure to state a claim as follows:

> "A motion to dismiss . . . is not favored and rarely granted."  This is especially true "when the asserted theory of liability is novel or extreme," as such cases "should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations."  In reviewing a motion to dismiss, we consider whether, taking all of the nonmoving party's factual allegations as true, "'it appears beyond doubt' that there exist no facts or circumstances that would entitle the plaintiff to relief."  We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false.

---

[1] The claims are not all pleaded with desirable clarity.  For example, Count II, asserted against the State, simply suggests that there is liability under the Vermont Tort Claims Act, 12 V.S.A. § 5601–5606.  The Act, of course, describes the sort of claims that are statutorily exempt from the State's sovereign immunity.  The Act itself is not a legal claim; merely citing it does little to indicate the nature of the claim being asserted.

[2] Mr. Williams asserts in the complaint both that Mr. South is a State employee and that he is a VSEA employee. VSEA is a union that represents State employees; it is not an entity of the State.  To the extent that Mr. Williams' pleading is ambiguous as to Mr. South's employment status, it is clear that any liability asserted against him in this case relates to his status as a VSEA employee.

[3] Ms. Diane Williams, Mr. Williams' wife, also is a plaintiff.  She seeks loss of consortium damages to whatever extent available in this case.

[4] Attorney O'Connell's motion to withdraw (Motion 5), Mr. Williams' motions to file sur-replies (Motions 6, 8), and the State Defendants' motion for an extension of time (Motion 7) are unopposed and **Granted**.  To the extent that Mr. Williams has suggested in briefing that the VSEA defendants' motion to dismiss is frivolous on its face, was asserted merely to cause unjustifiable delay, and warrants Rule 11 sanctions, any such request is **Denied** both for lack of compliance with Rule 11(c)(1)(A) and because it lacks any reasonable basis in the record.

*Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309 (citations omitted); see also 5B A. BENJAMIN SPENCER, ET AL., FED. PRAC. & PROC. CIV. § 1357 (4th ed.) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists.").

2.      *Factual background*

The thrust of Plaintiff's allegations in relation to the State and its employees is as follows. For an extended period of time, it was well known amongst staff that AOT employee Peter Lynds did not competently and safely operate machinery, such as the excavator in this case. Numerous employees complained many times about the hazards of working with Mr. Lynds. AOT, DHR, and VOSHA generally, and Defendants O'Brien, Gilbert, and Hebb specifically, received those complaints, and they effectively did nothing to ensure that Mr. Lynds was better trained and complied with that training. No one took any steps toward removing him from tasks in which he presented unreasonable risks or insulated his co-employees from his dangerous conduct.[5]

On the day of the injury, Mr. Lynds was operating an excavator. Mr. Williams needed to speak with him. To do so, despite knowing that Mr. Lynds presented a grave risk of harm, Mr. Williams entered the "zone of danger" around the excavator (within a close radius). After speaking to Mr. Lynds, Mr. Williams began to walk away. At that moment, Mr. Lynds engaged the excavator to move it forward. Mr. Williams remained in its path, however, with the injury to his leg resulting. There is no express allegation that Mr. Lynds intended to harm Mr. Williams, nor are there facts or allegations that would support such an inference. Instead, the allegation is that **if** Mr. Lynds had been properly observing safety protocols at the time, it would have taken him a moment longer before he could have engaged the excavator to move it forward, and at that point, he would have seen Mr. Williams was in the excavator's path, allowing Mr. Lynds to react and avert the excavator from striking Mr. Williams, thereby averting Mr. Williams' injury.

VSEA and Mr. South are not alleged to have had any material role in the excavator incident or resulting injury to Mr. Williams' leg. Rather, the allegations against them are as follows. In the year or two prior to the incident, Mr. Lynds is alleged to have been dealing with

---

[5] Mr. Williams cites to steps the State took in the aftermath of Mr. Williams' injury to improve worker safety, ostensibly to demonstrate its negligence for having not done so before the injury. Such subsequent remedial measures generally are not admissible for that purpose. See V.R.E. 407 ("Whenever, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.").

a serious heart condition, which caused him to be unable to work for many months. At some point, he sought medical clearance to return to work, but his private physician and another physician related to workers compensation did not clear him to return to work. Mr. South, in his union representative role, advised Mr. Williams to seek clearance at a particular urgent care facility. Mr. Lynds went to that facility, was seen by an undisclosed care provider, that provider cleared him to return to work, the State accepted the new provider's opinion despite the other providers' opinions to the contrary, and Mr. Lynds returned to work. Mr. Williams implies but does not clearly allege that there is some reason that the urgent care provider should not have cleared Mr. Lynds to return to work. Whether the provider should or should not have approved Mr. Lynds, it is unclear how that decision could be characterized as some sort of misconduct by Mr. South or the VSEA for liability purposes.

More importantly, the injury to Mr. Williams' leg is not alleged to have had anything whatsoever to do with Mr. Lynds' alleged heart condition. The only asserted connection is: (a) if Mr. South had not suggested that Mr. Lynds go to the urgent care center, then Mr. Lynds never would have been cleared to go back to work; and (b) if Mr. Lynds had never gone back to work, then—ipso facto—he would not have been at work on the date in question and could not have injured Mr. Williams.

3.    *Analysis—the State Defendants' motion to dismiss*

The State argues that the tort claims asserted against it are barred by the workers' compensation exclusivity statute, 21 V.S.A. § 622, because the allegations cannot amount to any claim that it intentionally sought to harm Mr. Williams. The State also argues that the UM/UIM claim asserted against it makes no sense because Mr. Williams does not assert that he is seeking a recovery "from a marginally insured (or uninsured) third-party motorist." The State employee-Defendants (other than Mr. Lynds) argue that the complaint should be dismissed as against them because they are not viable third parties subject to liability under 21 V.S.A. § 624 as they are only alleged to have breached their employer's nondelegable duty to provide a safe workplace to employees and otherwise exercising managerial prerogatives. Mr. Lynds' argues that the court should dismiss the claim against him by adopting and applying the law of Missouri to this case.

4

a.     *The tort claims against the State*

Subject to certain exceptions, when an employee is entitled to workers' compensation for an injury, all other rights and remedies that would have been available to that employee are forfeited. Section 622 of the Act, as applied to the State as Mr. Williams' employer, provides:

> [T]he rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury for which he or she is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of the employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise on account of such injury.

21 V.S.A. § 622. An employee is entitled to benefits under the Act if the injury was caused "by accident arising out of and in the course of employment." 21 V.S.A. § 618(a)(1)(A). In simple terms, then, if the injury was an accident, relief under the Act bars any other claims against the employer.[6]

Vermont case law draws a distinction between what is and is not an accident for purposes of the Act's exclusivity provision. In its motion, the State argues that the alleged facts amount to an accident barring Mr. Williams' claims. Mr. Williams argues that the allegations show that the injury was caused by intentional conduct (rather than an accident), and that he should be permitted to conduct discovery relevant to that standard as well as into a different standard (the substantial certainty standard) that the Supreme Court has not but could adopt in the future.

Four cases are on point to this matter: *Kittell v. Vermont Weatherboard, Inc.*, 138 Vt. 439 (1980) (per curiam); *Mead v. Western Slate, Inc.*, 2004 VT 11, 176 Vt. 274; *Stamp Tech, Inc. ex rel. Blair v. Lydall/Thermal Acoustical, Inc.*, 2009 VT 91, 186 Vt. 369; and *Martel v. Connor Contracting Inc.*, 2018 VT 107, 208 Vt. 498.

*Kittell* set a clear standard:

> The overwhelming weight of authority in other jurisdictions is that "the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." Nothing short of a specific intent

---

[6] See *P. Gillies*, *The Grand Bargain Between Management and Labor: Celebrating 100 year of Workers' Compensation in Vermont*, 41 Vt. Bar J. 10 (Summer 2015) (tracing the history and compromise between employees and employers behind the workers' compensation program that granted broad recovery and remedies for workplace injuries in exchange for forfeiting private rights of action against employers).

to injure falls outside the scope of the Act. Absent such specific intent, the right to benefits under the Act, and thus the triggering of the exclusivity rule of section 622, "depends on one simple test: Was there a work-connected injury?"

*Kittell*, 138 Vt. at 441 (citations omitted). In *Kittell*, the employer had removed safeguards from a saw, instructed an inexperienced employee who did not know how to use the saw to work with it, and the employee was injured as a result. The court quickly concluded that, under the standard above, the claim could not survive § 622.

In *Mead*, the employee worked at a slate quarry. He was injured in a rockslide. The resulting claim against the employer was that the employer knew that the rockslide was substantially certain to occur, and that substantial certainty satisfied *Kittell's* specific intent test. The trial court instructed the jury "that it was plaintiff's burden to prove that defendants had the 'specific intent to injure him,' but that such intent could be established in one of two ways: that defendants either 'had the purpose or desire to cause him injury or that[,] although the Defendants lack[ed] such purpose or desire[,] they knew to a substantial certainty that their actions would bring about his injury.'" *Mead*, 2004 VT 11, ¶ 6. In other words, according to the trial court, "substantial certainty" is a form of specific intent—it is a different formulation of the same standard. The instruction confused the jury, which returned a verdict in the plaintiff's favor. See *id*. ("Later, during its deliberations the jury sent a note to the court stating, 'we need a good detailed definition of specific intent.' After consulting with counsel, the court informed the jury that it had defined specific intent in the instructions already given, and offered no further definition."). The jury determined that "although neither defendant had a specific purpose or desire to injure [the plaintiff], both knew to a substantial certainty that their actions or inactions would injure plaintiff." *Id*. ¶ 7.

On appeal, the Supreme Court explained at length that some out of state courts more recently had relaxed the specific intent standard to encompass the substantial certainty standard. It also described that some courts had refused to do that, and other courts had modified their standards in other ways. *Id*. ¶¶ 13–16. The Court emphasized:

> Even those courts that have adopted the substantial-certainty test have stressed that it is intended to operate as a "very narrow exception" intended for the most "egregious employer conduct," and hence is "to be strictly construed." As [one court] explained, "the dividing line between negligent or reckless conduct

on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the Act is not circumvented simply because a known risk later blossoms into reality."

*Id*. ¶ 16 (citations omitted). The *Mead* Court did not then either adopt or reject the substantial certainty test. Instead, it ruled that the evidence was insufficient even if it were to relax the standard. *Id*. ¶ 17 ("Even assuming that we were receptive to modifying *Kittell* consistent with the trial court's approach, and viewing the evidence in the light most favorable to the judgment, we do not believe that the record here 'fairly and reasonably' supports a rational inference that defendants knew to a *substantial certainty* their actions would result in injury to plaintiff."). It reversed on that basis.

*Kittell's* specific intent standard thus survived *Mead*.

The issue re-emerged five years later in *Stamp Tech*. There, the employee's arm was crushed by an industrial press. He claimed that it happened because safeguards that would have prevented it had been removed from the machine, allegations that would seem to be quite similar in material respects to those that were plainly insufficient in *Kittell*. The trial court ruled that the facts were insufficient under both the *Kittell* standard and the substantial certainty standard that had never been adopted in Vermont. *Stamp Tech*, 2009 VT 91, ¶ 28.

On appeal, the majority disagreed with the trial court's evaluation of the evidence. It concluded instead that the material facts were disputed for Rule 56 purposes and could not support a ruling on summary judgment either under *Kittell* or the substantial certainty standard. In so ruling, the Court expressly made clear that it was not at that time adopting the substantial certainty standard. *Id*. ¶ 29. The dissent, however, accused the majority of adopting a "liberal version" of that standard *sub silentio* even while insisting that it had not. *Id*. ¶ 32 (Burgess, J., dissenting). The thrust of the dissent is that the undisputed facts could not bear the *Kittell* standard, so the majority effectively applied a more (much more) lenient standard.

However compelling one may find the dissent in *Stamp Tech,* based on the facts as described in the majority opinion, this Court declines to dwell on it here because lower courts are bound by the majority decisions of higher courts, not their dissents. See *Aldaco v. RentGrow, Inc*., 921 F.3d 685, 688 (7th Cir. 2019). In this case, the *Stamp Tech* majority expressly held that

it was expressly not modifying or altering the *Kittell* standard.  The court takes that statement at face value.

Were there any lingering confusion about that matter, the Vermont Supreme Court itself resolved this issue nine years later in *Martel*.  See *Martel*, 2018 VT 107, ¶¶ 12–13.  The *Martel* Court explained in no uncertain terms that the substantial certainty standard would require a modification to the *Kittell* specific intent standard (i.e., it is not a mere application of the specific intent standard), no such modification was made in *Stamp Tech* (or any other case), and the *Kittell* standard retains its original vitality.  See *id*. ¶¶ 10, 14.  "[W]e would need to modify the holding in *Kittell* to permit an injured employee to seek a remedy other than workers' compensation where the employer, although having no intent to injure, knew that injury to the employee was substantially certain to occur."  *Id*. ¶ 10.  Specific "[i]ntent to injure under *Kittell* is a high bar—it reaches only those instances where an employer deliberately causes an employee an injury."[7]

Reviewing the allegations against the State under this framework, even with all reasonable inferences drawn in Mr. Williams' favor, there is no allegation that anyone deliberately caused Mr. Williams' injury.  Mr. Lynds is not even alleged to have done so.  As far as the allegations go, the injury happened because Mr. Lynds engaged in unsafe practices and did not see that Mr. Williams remained in the path of the excavator—not because he bore any specific intent to harm Mr. Williams.  As far as the State is concerned, Plaintiff has only alleged that it did not take steps to minimize the chance of the sort of injury that occurred when the State knew or should have known that such steps were needed, as though it carried out a specific intent to harm one person by putting them near another person who lacked the same intent.  That falls well short of any specific intent to cause injury.

---

[7] Mr. Williams would have the court ignore the *Martel* majority's analysis on this point as mere obiter dictum because it could have resolved the case by ruling that the facts could not satisfy the relaxed standard and thus it did not need to "re-adopt" the *Kittell* standard.  Obiter dictum is a "judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)."  Black's Law Dictionary (7th ed. 1999) 1100.  Its essence is that the comment is incidental or collateral to the primary issue under review and does not bear directly on the matter before the court at the time.  It is not, however, a license for a trial court to reimagine the analysis that the higher court saw fit to use in its decision-making process.  In *Martel*, the Court determined to rule on the issue by clarifying that the *Kittell* standard remains the applicable standard in Vermont and limn the distinction between specific intent and substantial certainty.  This court is not in a position to second guess the *Martel* Court's judgment or reduce it in that regard.

Additionally, the Court does not find separate support for permitting these claims to continue simply to allow Mr. Williams an opportunity to conduct discovery to determine if he could meet a more relaxed substantial certainty standard. As discussed above, the Court does not find any ambiguity in the standard articulated in *Stamp Tech* that would allow an exception to 21 V.S.A. § 622 at a lower threshold than the narrow exception articulated in *Kittell* and most recently re-affirmed in *Martel*. While courts will allow novel claims to continue past the motion to dismiss phase of the case, it is usually because the claim is one of first impression, a unique application of established doctrine, an extension of the law supported by prior caselaw, or because of ambiguity or a split in authority. See 5B A. BENJAMIN SPENCER, ET AL., FED. PRAC. & PROC. CIV. § 1357, at n.73 (collecting cases). The present matter does not meet any of those categories of "novel claims." Instead, Plaintiff seeks to advocate a change to the *Kittell* standard, which has already been litigated and resolved. Plaintiff's argument presents the Court with a slippery slope.

If a party can argue that they are pursuing a novel claim by seeking to overturn an established standard, they are creating a whale that would swallow any meaningful Rule 12(b)(6) review whole. Nothing in *Stamp Tech* suggests or requires the trial court to evaluate this case under lower standard than *Kittell*, and the trial court is not obligated to review a case under a standard that the Supreme Court may one day adopt but so far expressly has not. The court applies the prevailing law to this case, and that includes the *Kittell* standard.

Finally, even if the Court were to consider the substantial certainty standard, Plaintiff's complaint falls short. The allegations against the State are that it failed to ensure that Mr. Lynds was properly trained, failed to ensure that he complied with his training or whatever his training should have been, and should not have required other employees to work with him when he did not comply with safety protocols. Such allegations are insufficient to support an inference that the State had substantial certainty that Mr. Lynds would unintentionally, even if recklessly, drive over Mr. Williams' leg when he did. The Court explained in *Mead* that the substantial certainty standard is a very minor deviation from the specific intent standard, must be strictly construed, and is reserved for the most egregious circumstances. *Mead*, 2004 VT 11, at ¶ 15, n. n4. That standard cannot be met by the allegations of the present complaint.

Analyzing these claims in a light most favorable to Plaintiff, the allegations within his complaint cannot, as a matter of law, meet either the prevailing *Kittell* standard or any lesser

9

substantial certainty standards.  Based on this, the State's motion is **Granted** as to the tort claims asserted against it by Mr. Williams.

b.	*The UM/UIM claim against the State*

Apart from his tort claims against the State, Mr. Williams asserts that the State (alleged to be self-insured for UM/UIM purposes) might have liability to him under some applicable UM/UIM insurance coverage.  See 23 V.S.A. §§ 941–943 (insurance against uninsured, underinsured, or unknown motorists).  The State does not argue that this claim is barred by 21 V.S.A. § 622.  It does argue, however, that this claim should be dismissed insofar as the complaint lacks even the most basic allegations showing that there could be a potentially viable claim.  Mr. Williams opposes dismissal and seeks leave to amend in the event that the court finds the current allegations insufficient.

As described in the complaint, Mr. Williams' UM/UIM claim substantially is this: "Here, Plaintiff Williams was run over by a excavator on a public highway, by a state employee. The State's automobile UIM policy applies."  Complaint ¶ 130 (filed Jan. 2, 2026).

That allegation is insufficient to state a claim.  Generally, one asserting a UM/UIM claim against an insurer would identify the underlying tort-defendant and his auto insurer as well as the tort-plaintiff's insurer and make some allegations to the effect that the tort-defendant's applicable liability coverage is insufficient to compensate the injury and the difference triggers the tort–plaintiff's available UM/UIM coverage.  Mr. Williams' allegations do not come close to describing his UM/UIM claim even in this most basic manner.  The claim is dismissed for that reason.  The State's motion to dismiss is **Granted** on this point.

The court does not grant proactive leave to amend to reassert this claim, but Mr. Williams may seek leave to amend his complaint by filing a Rule 15(a) motion with the proposed amended pleading attached to the motion.

c.	*The claims against Ms. O'Brien, Mr. Gilbert, and Mr. Hebb*

Ms. O'Brien (DHR), Mr. Gilbert (AOT), and Mr. Hebb (AOT) are managers/supervisors in State employment.  Mr. Williams asserts that they acted with gross negligence insofar as they did not take the steps that they should have regarding Mr. Lynds' training, supervision, ability to work safely with others, and how they responded to complaints about him.  All three of these defendants argue that they are protected by the exclusivity provision of the Workers' Compensation Act.

10

The exclusivity provision of 21 V.S.A. § 622, is subject to exceptions at § 618(b) and § 624. Section 618(b) provides broader options to the employee if the employer did not comply with § 687 (security for compensation). This exception is not relevant to the present case. Section 624(a)(1) provides that: "Where the injury for which compensation is payable under the provisions of this chapter was caused under circumstances creating a legal liability to pay the resulting damages in some person other than the employer," the injured person may proceed against that third party. The question is whether, in the circumstances of this case, these defendants are persons "other than the employer."

The general rule is that "[w]here the duty is that of the employer and is nondelegable, courts have generally held that the suit cannot be maintained [against a fellow employee] because it is actually against the employer." *Garrity v. Manning*, 164 Vt. 507, 511 (1996). The principal such duty is to provide a safe place to work, which is codified at 21 V.S.A. § 223(a). "As long as a corporate duty is in issue, immunity exists whether the officer fails to discharge it or actually does so in a negligent manner." *Id*. § 513. Conversely, "[i]f a corporate officer acts as a co-employee and is negligent in discharging a duty, apart from a nondelegable duty of the corporation, the employer's immunity does not insulate the officer from liability." *Id*.; see also *Gerrish v. Savard*, 169 Vt. 468, 472 (1999) ("To establish co-employee liability, the plaintiff must show that there was a personal duty owed the plaintiff apart from the nondelegable duties of the employer."). "To be considered 'other than the employer,' the individual must not be involved in performing a nondelegable duty of the employer and must not be exercising managerial prerogatives—because both of these activities indicate that the individual is acting as an employer." *Gerrish*, 169 Vt. at 474. As the Court has explained, "Neglect of safety precautions by a corporation through the absence of appropriate remedial actions by its officers [or supervisors] is a breach of the employer's duty." *Dunham v. Chase*, 165 Vt. 543, 544 (1996).

In relation to the injury, the allegations are clear that Ms. O'Brien, Mr. Gilbert, and Mr. Hebb were acting in a managerial capacity exercising the prerogatives of their employer, the State of Vermont, including the duty to provide a safe workplace. It makes no difference in this regard whether their conduct is characterized as omissions or affirmative acts. See *Garger v. Desroches*, 2009 VT 37, ¶ 7, 185 Vt. 634 ("We conclude that any distinction between omissions and affirmative acts is not relevant to the question of whether defendant is performing a nondelegable duty of the employer."). All three were, for exclusivity purposes, acting as agents

11

and part of the corporate employer.  The exception for co-employee liability of those "other than the employer" does not apply to them.

The claims against Ms. O'Brien, Mr. Gilbert, and Mr. Hebb are dismissed.  This portion of Defendants' motion to dismiss is **Granted.**

> d. *The claim against Mr. Lynds*

Based on the law above, one might suppose that the gross negligence claim against Mr. Lynds in fact is viable.  Mr. Lynds is alleged to be an ordinary co-employee not exercising any managerial prerogatives of his employer, and he would not seem to have been involved in complying with any duty on the part of the State to provide its employees with a safe workplace. He merely operated an excavator with gross negligence and injured a fellow employee.  He is alleged, therefore, to have breached a personal duty he owed to those around him.

Mr. Lynds argues instead that the court should adopt the law of Missouri as it unfolded in *Conner v. Ogletree*, 542 S.W.3d 315 (Mo. 2018), and *Fogerty v. Armstrong*, 541 S.W.3d 544 (Mo. 2018) (both now superseded by statute).  Those cases represent new law in  Vermont and would create an apparently drastic limitation on co-employee liability.  In short, according to those cases, if the co-employee/tortfeasor caused the injury by himself breaching the employer's nondelegable duty to maintain a safe workplace, the employer's immunity attaches to that employee.  As the *Connor* Court described in part: "for purposes of determining whether a co-employee can be liable for an employee's injury . . ., the co-employee's negligence is assumed. What matters, and the only thing that matters . . . is whether the duty the co-employee breached was part of the employer's duty to protect employees from reasonably foreseeable risks in the workplace.  If so, the claim is barred.  If not, the suit against the co-employee can proceed." *Conner*, 542 S.W.3d at 324.

Thus, in Mr. Lynds' view, it is irrelevant that he may have breached a personal duty he owed to a co-employee because his conduct also breached his employer's duty to provide a safe workplace.  At least for now, as the State recognizes, this is not the recognized law of Vermont.

No doubt, Vermont case law has evolved, as briefly described in the prior section, to put certain limits on co-employee liability to avoid effectively doubling the employer's liability and depriving it "of the benefit of its bargain with an employee to provide workers' compensation benefits as the exclusive response to a workplace injury." *Garrity v. Manning*, 164 Vt. 507, 511 (1996).

Mr. Lynds is welcome to argue in support of an evolution of the law in this case, but doing so does not demonstrate any deficiency in the complaint vis-à-vis the claim against him for Rule 12(b)(6) purposes  It is a novel affirmative defense, and the State's argument about importing Missouri case law would be more profitably "explored in the light of facts as developed by the evidence." *Ass'n of Haystack Prop. Owners, Inc. v. Sprague*, 145 Vt. 443, 447 (1985); see also *Endres v. Endres*, 2006 VT 108, ¶ 4.

The State's motion to dismiss is **Denied** as to the claim against Mr. Lynds.

4.      *Analysis—the VSEA Defendants' motion to dismiss*

VSEA and Mr. South argue that the claims against them should be dismissed because Mr. Williams asserts no applicable duty that they owed him that they possibly could have breached and, separately, that the claims facially lack any causal connection whatsoever to the injury.

Setting the issue of duty aside, these claims are dismissed for lacking any possible legal causation connecting anything VSEA and Mr. South are alleged to have done to the injury. Their involvement in the underlying narrative relates solely to Mr. Lynds' heart condition and return to work.  Those allegations are extremely remote to the extent that they are asserted in support of actual causation, and they definitively establish a lack of proximate, or legal, causation, which the Court has described as follows:

> [T]he plaintiff must first show that the harm would not have occurred "but for" the defendant's conduct such that the "tortious conduct [was] a necessary condition for the occurrence of the plaintiff's harm."  The plaintiff must also show that the defendant's negligence was "legally sufficient to result in liability" such that "liability attaches for all the injurious consequences that flow [from the defendant's negligence] until diverted by the intervention of some efficient cause that makes the injury its own."  Although proximate cause "ordinarily" is characterized as "a jury issue," it may be decided as a matter of law where "the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way."

*Collins v. Thomas*, 2007 VT 92, ¶ 8, 182 Vt. 250 (2007).  Mr. Lynds' desire to return to work, regardless of any involvement VSEA and Mr. South had in it, has no perceptible connection to his bad driving.

VSEA and Mr. South's motion to dismiss is **Granted** on that basis.

## ORDER

13

For the foregoing reasons:

(a)    The VSEA Defendants' motion to dismiss (Motion 3) is **Granted**.

(b)    The State Defendants' motion to dismiss (Motion 4) is **Granted**, except it is **Denied in part** in regard to the claims against Defendant Peter Lynds.

(c)    If Mr. Williams seeks to amend the complaint to assert a UM/UIM claim, he shall file a Rule 15(a) motion, with the proposed amended pleading attached, within 30 days.

(d)    Attorney O'Connell's motion to withdraw (Motion 5) is **Granted**.

(e)    Mr. Williams' motions to file sur-replies (Motions 6, 8) are Granted.

(f)    The State Defendants' motion for an extension of time (Motion 7) is **Granted**.

Electronically signed on 6/26/2026 1:57 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge

14